IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
MARSHALL DIVISION

| | |
|---|---|
| FPX, LLC (D.B.A. FIREPOND) | |
| Individually and on Behalf of All Others Similarly Situated, | |
| Plaintiff, | Civil Action No. _____ |
| v. | |
| (1)    GOOGLE, INC.; | |
| (2)    YOUTUBE, LLC; | CLASS ACTION COMPLAINT |
| (3)    AOL, LLC; | |
| (4)    TURNER BROADCASTING SYSTEM, INC.; | JURY TRIAL DEMANDED |
| (5)    MYSPACE, INC. AND | |
| (6)    IAC/INTERACTIVECORP | |
| Defendants. | |

## CLASS ACTION COMPLAINT

This is a class action complaint in which Plaintiff, FPX, LLC (doing business as "Firepond") on behalf of itself and all others similarly situated, pursuant to Rule 23 of the Federal Rules of Civil Procedure, by and through the undersigned Counsel of Record, complain and allege, upon information and belief, except as to those paragraphs applicable to the named Plaintiff, which are based on personal knowledge, against Defendants Google, Inc., YouTube, LLC, AOL, LLC, Turner Broadcasting System, Inc., MySpace, Inc. and IAC/InterActiveCorp as follows:

## PARTIES

1.      Plaintiff and Class Representative:

     a.    Plaintiff, FPX, LLC ("Firepond") is a Texas limited liability company with its principal place of business at 207C N Washington Street, Marshall, TX.

1

b. Firepond was founded in 1983 as Clear with Computers, Inc. to develop and manufacture software assisting a variety of businesses in all aspects of the sales process and in the configuration, pricing and quotation of a variety of products. At the time of its founding, Firepond's only assets were the computer program and strong desire to distribute the program to salespeople, so the company's first headquarters was a small building on the lot of a local Ford dealership. The intention was to sell its software directly to farm equipment manufacturers and to automotive dealers.

c. Firepond owns the trademarks "Firepond" and "Firepond CPQ," (collectively the "Firepond Marks").

d. Firepond offers and provides a number of software products and online non-downloadable software for assisting a variety of businesses in all aspects of the sales process and in the configuration, pricing and quotation of a variety of products as well as corresponding consulting services, analysis and maintenance (collectively the "Firepond Products and Services") under the Firepond Marks.

e. The Firepond Marks are unique and distinctive, and, as such, designate a single source of origin.

f. Firepond's main Internet website using the Firepond Marks and featuring information on many of the products and services of Firepond can be accessed via the domain name "www.firepond.com" which has been registered and continuously used since 1999.

g. The Firepond Marks are valid and enforceable trademarks. Firepond owns the

following United States trademark registrations for the Firepond Marks:

> Trademark: Firepond;
> Registration No. 2,968,557
> Class 9:  Computer software for creating sales presentations, for creating
>     two and three dimensional models of product configurations, for
>     creating marketing data libraries, for drafting sales proposals
>     and for sales training, for use in the financial, insurance,
>     manufacturing, transportation, and retail sales and marketing
>     industries.
> Date of First Use in Commerce:  January 31, 2005
> Class 42:  Consulting, analysis, implementation and maintenance services
>     in the field of computer software.
> Date of First Use in Commerce:  January 31, 2005
> Registration Date:  July 12, 2005

> Trademark: Firepond CPQ;
> Registration No. 3,439,414
> Class 42: Providing online non-downloadable software, namely providing
>     an online non-downloadable suite of computer software that
>     enables a company's sales force and supporting organizations to
>     configure complex products and services, accurately price
>     products and services, develop price quotes, generate high
>     quality proposals, automate and simplify product pricing and
>     configuration, improve order accuracy and reduce the cost of
>     sales, optimize sales processes, create product catalogs, and
>     provide an interactive selling system.
> First Use in commerce:  August 2005
> Registration Date: June 3, 2008

h. Plaintiff Firepond has been personally injured in its business and property as a

direct and proximate result of the violations set forth herein. The injury and

damage suffered is economic and non-economic in nature and includes, but is

not limited to: diversion of business; confusion; loss of revenue; loss of

goodwill, and other such related injury and damage.

2.     The Putative Class Members

a.  Plaintiff brings this action on its individual behalf and as Class Representative on behalf of a class (the "Class") consisting of the following:

    Any and all individuals and/or entities (excluding governmental entities, Defendants, and Defendants' parents, predecessors, subsidiaries, affiliates, and agents) domiciled within the state of Texas that own a mark that has been registered with the United States Patent and Trademark Office ("USPTO") that has been sold by defendant Google as a keyword and/or an Adword during the period May 11, 2005 through the present.

b.  Each member of the Class owns certain registered United States trademarks (collectively the "Class Marks").

c.  Excluded from the Class are Defendants, any entity in which Defendants have a controlling interest or are a parent or subsidiary of, or any entity that is controlled by Defendants and any of its officers, directors, employees, affiliates, legal representatives, heirs, predecessors, successors and assigns.

d.  The Class Period is May 11, 2005, through the date of filing of this Complaint (the "Class Period").

e.  There are thousands of geographically dispersed putative members of the Class within the state of Texas. Accordingly, the Class is so numerous that joinder of all members is impracticable.

f.  The Class is ascertainable, as the names and addresses of all Class Members can be identified in business records maintained by Defendants and the United States Patent and Trademark Office.

g.  Defendants have acted or refused to act on grounds generally applicable to the Class, thereby making appropriate final injunctive relief or corresponding declaratory relief with respect to the Class.

h.  Plaintiff will fairly and adequately protect the interests of the Class and have no interests adverse to, or which directly and irrevocably conflict with, the interests of other Class Members.

i.  Plaintiff is represented by counsel experienced and competent in the prosecution of complex class action litigation.

j.  There are questions of law and fact common to the Class which predominate over any questions affecting only individual Class Members. Such common questions include, but are not limited to, the following:

  i.   Whether one or more of the Defendants' actions as alleged herein violate the Lanham Act, *15 U.S.C. § 1051* et seq.;

  ii.  Whether one or more of the Defendants' actions, as alleged herein, constitute trademark infringement under *15 U.S.C. § 1114(1)*;

  iii. Whether one or more of the Defendants' actions, as alleged herein, constitute false designation of origin or unfair competition under *15 U.S.C. § 1125(a)*;

  iv.  Whether one or more of the Defendants' actions, as alleged herein, constitute contributory or vicarious trademark infringement, false designation of origin, or unfair competition under 15 U.S.C. *§§ 1114(1) or 1125(a).*

  v.   Whether one or more of the Defendants' actions, as alleged herein, constitute Texas state statutory, and/or common law trademark infringement;

vi.   Whether one or more of the Defendants' actions, as alleged herein, constitute contributory, vicarious, state statutory, and/or common law trademark infringement;

vii.  Whether Defendants were unjustly enriched as a result of their unlawful conduct, as alleged herein;

viii. Whether any of the Defendants' actions are continuing in nature;

ix.   Whether Plaintiff and the Class are entitled to declaratory and/or injunctive relief to rectify the alleged violations of law and, if so, what is the appropriate nature of the equitable and injunctive relief to which Plaintiff and the Class may be entitled;

x.    Whether any of the Defendants' conduct is willful and/or intentional;

xi.   Whether the conduct of any of the Defendants, as alleged in this Complaint, caused damages to the Plaintiff or to the other members of the Class;

xii.  Whether the Defendants should be ordered to disgorge the profits derived from their conduct; and

xiii. The appropriate measure of damages sustained by Plaintiff and other members of the Class.

k.  Plaintiff's claim is typical of the claims of the Class Members because they originate from the same illegal policy and practices of Defendants, and because Defendants have acted in the same way toward Plaintiff and the Class.

l.  Defendants' operations are Internet-based/automated and technology-based. Defendants' actions toward the Class are identical or substantially similar, and arise out of a uniform policy and common course of illegal conduct, because Defendants effectuate the Deceptive Trademark Practice, as defined herein below, and all of the actions alleged herein, through the implementation of a uniform policy using a common, systemic, uniform, electronic and largely automated process that causes injury and damage to Plaintiff and the Class in a common and consistent manner.

m.  Plaintiff will fairly and adequately protect the interests of the members of the Class.  Plaintiff is committed to the vigorous prosecution of this action, has retained counsel competent and experienced in class litigation, and have no interests antagonistic to or in conflict with those of the Class. As such, Plaintiff is an adequate Class Representative.

n.  A class action is superior to other available methods for the fair and efficient adjudication of this controversy.  Class treatment will permit a large number of similarly situated persons to prosecute their claims in a single forum simultaneously and without unnecessary duplication and effort that would result from numerous individual actions.

o.  Individual litigation of the facts of thousands of cases would unduly burden the courts. Individual litigation would further present a potential for inconsistent or contradictory judgments, and would increase the delay and expense to all parties and the court system.  Further, the expense and burden of individual litigation make it impossible for Class Members to individually

redress the wrongs alleged herein. By contrast, a class action presents far fewer management difficulties and provides the benefit of single adjudication under the comprehensive supervision of a single court. Notice of pendency of the action and any resolution thereof can be provided to proposed class members by publication and/or other means.

p. This action is maintainable as a class action under Rule 23(b)(2) since the unlawful actions of Defendants, as alleged herein, have been taken on grounds equally applicable to all members of the class, thereby making appropriate final injunctive relief or corresponding declaratory relief with respect to the class as a whole.

q. This action is also maintainable as a class action under Rule 23(b)(3), as common questions of law and fact described above predominate over any questions affecting only individual members, and a class action is superior to other available methods for the fair and efficient adjudication of the controversy.

r. All allegations and claims are plead in the alternative to the extent required for proper construction under applicable state or federal law.

3. The Plaintiff and the Class Members have registered trademarks and trade names (the "Class Marks");

4. On information and belief, Defendant Google Inc. ("Google") is a Delaware corporation with its principal place of business at 1600 Amphitheater Parkway, Mountain View, California 94043. This Defendant has appointed The Corporation Trust Company, Corporation

Trust Center, 1209 Orange Street, Wilmington, Delaware 19801 as its agent for service of process.

5.      On information and belief, Defendant YouTube, LLC ("YouTube") is a Delaware corporation. YouTube is a wholly owned and controlled subsidiary of Defendant Google Inc., a Delaware corporation with its principal place of business at 1600 Amphitheater Parkway, Mountain View, California 94043.   This Defendant has appointed The Corporation Trust Company, Corporation Trust Center, 1209 Orange Street, Wilmington, Delaware 19801 as its agent for service of process.

6.      On information and belief, Defendant AOL, LLC ("AOL") is a Delaware corporation with its principal place of business at 22000 AOL Way, Dulles, Virginia 20166. This Defendant has appointed Corporation Service Company, 701 Brazos St., Suite 1050, Austin, Texas 78701 as its agent for service of process.

7.      On information and belief, Defendant Turner Broadcasting System, Inc. ("TBS") is a Georgia corporation with its principal place of business at One CNN Center, 100 International Blvd., Atlanta, Georgia 30303.   This Defendant has appointed CT Corporation System, 818 W. 7th St., Los Angeles, CA 90017-3407 as its agent for service of process.

8.      On information and belief, Defendant MySpace, Inc. ("MySpace") is a Delaware corporation with its principal place of business at 8391 Beverly Boulevard, Suite 349, Los Angeles, California 90048.   This Defendant has appointed The Corporation Trust Company, Corporation Trust Center, 1209 Orange Street, Wilmington, DE 19801as its agent for service of process.

9.      On information and belief, Defendant IAC/InterActiveCorp ("ASK.com") is a Delaware corporation with its principal place of business at 555 West 18th Street, New York, NY

10011. This Defendant has appointed National Registered Agents, Inc., 160 Greentree Drive, Suite 101, Dover, DE 19904 as its agent for service of process.

## JURISDICTION AND VENUE

10. This Court has original federal question jurisdiction over this action. This Complaint is brought against Defendants under the Lanham Act, *15 U.S.C. § 1051 et seq.;* trademark infringement under *15 U.S.C. § 1114(1)*; false designation of origin and unfair competition under *15 U.S.C. § 1125(a)*, to recover treble damages and the costs of this suit, including reasonable attorney's fees, for injunctive and equitable relief, and for the damages sustained by Plaintiff and the Class Members by reason of Defendants' violations of federal law as more fully set forth hereunder.

11. This Court has jurisdiction over this action pursuant to *28 U.S.C. §§ 1331, 1337*, and *1338*, and other applicable federal statutes.

12. This Court has supplemental jurisdiction over the claims in this Complaint that arise under state statutory and common law pursuant to *28 U.S.C. § 1367(a)* because the state law claims are so related to the federal claims that they form part of the same case or controversy and derive from a common nucleus of operative facts.

13. This Court has *in personam* jurisdiction over each of the Defendants, as each was engaged in federal trademark infringements that were directed at and/or caused damages to persons and entities residing in, located in, or doing business throughout the United States, including the Eastern District of Texas.

14. Venue is proper in this judicial district pursuant to *15 U.S.C. § 22 , and 28 U.S.C. § 1391(b)* and *(c)* because, during the Class Period, Defendants resided, transacted business, were found, or had agents in this district, and because a substantial part of the events giving rise

to Plaintiff's and the Class Members' claims occurred, and a substantial portion of the affected interstate trade and commerce described below has been carried out, in the Eastern District of Texas.

15.     No other forum would be more convenient for the parties and witnesses to litigate this action.

16.     On information and belief, Defendants are subject to this Court's specific and general personal jurisdiction pursuant to due process and/or the Texas Long Arm Statute, due at least to their substantial business in this forum, including: (i) at least a portion of the infringements alleged herein; and (ii) regularly doing or soliciting business, engaging in other persistent courses of conduct, and/or deriving substantial revenue from goods and services provided to individuals in Texas and in this Judicial District.

## SUMMARY OF THE CLASS ACTION

17.     Defendant Google operates for its own profit an Internet search engine which is claimed by Defendant Google to be the most popular method Internet Users employ to obtain information and shop for goods and services on the Internet.

18.     Defendants YouTube, AOL, TBS, MySpace, and ASK.com utilize the Google search engine and the Google AdWords advertising service within each such Defendant's proprietary website.

19.     Upon information and belief, through its Google AdWords advertising service, Defendant Google sells search terms, including registered trademarks (including the Firepond Marks and the Class Marks) to advertisers who are not affiliated with, sponsored by, or authorized by the trademark owners.  It is Google's policy and practice to display the advertisements of those who buy the keywords on the top or right side of the first page of results

when an Internet User uses the Google search engine to search for the trademark as a search term.  It is Google's policy that it will sell any trademark to any advertiser, regardless of whether the advertiser is affiliated with, sponsored by, or authorized by the trademark owner.  Further, it is Google's policy that it will not remove or disable any link to any advertisement, even after receiving actual notice that the advertisement is infringing a registered trademark, unless the advertisement actually uses the trademark in the text of the ad.  If the trademark does not appear in the text of the ad, Google's policy is that it will not remove or disable any link, even after receiving actual notice of infringement.  Google's policy and practice of selling registered trademarks as keywords and/or adwords to competitors of the trademark holders shall be referred to herein as the "Deceptive Trademark Practice."

20.     Defendant Google has improperly infringed upon the Plaintiff's Firepond Marks by selling, for example, Plaintiff's trademark "Firepond" to Plaintiff's competitors as a keyword so that when an Internet User searches for "Firepond" on Defendant Google's Internet search engine, the competitor's advertisement hyperlink will appear at the very top of and/or on the right side of the first page of the search results.  This enables Google and Plaintiff's competitors to use the "Firepond" trademark to place their advertising hyperlinks in front of consumers who specifically search for the Plaintiff, thereby confusing Internet Users and diverting a percentage of such Users from Plaintiff and enjoying and benefitting from all of the goodwill and "buyer's momentum" associated with Plaintiff's valuable trademark.  An example of Google's improper use of the Firepond Mark is set forth below:



21.     Defendant YouTube has improperly infringed upon the Plaintiff's Firepond Marks by selling, for example, Plaintiff's trademark "Firepond" to Plaintiff's competitors as a keyword so that when an Internet User searches for "Firepond" on Defendant Google's Internet search engine which is available on the YouTube website, the competitor's advertisement hyperlink will appear at the very top of and/or on the right side of the first page of the search results.  This enables YouTube, Google and Plaintiff's competitors to use the "Firepond" trademark to place their advertising hyperlinks in front of consumers who specifically search for the Plaintiff, thereby confusing Internet Users and diverting a percentage of such Users from Plaintiff and enjoying and benefitting from all of the goodwill and "buyer's momentum" associated with Plaintiff's valuable trademark. An example of YouTube's improper use of the "Firepond" trademark is set forth below:



22.     Defendant TBS has improperly infringed upon the Plaintiff's Firepond Marks by selling, for example, Plaintiff's trademark "Firepond" to Plaintiff's competitors as a keyword so that when an Internet User searches for "Firepond" on Defendant Google's Internet search engine which is available on the CNN.com website, the competitor's advertisement hyperlink will appear at the very top of and/or on the right side of the first page of the search results. This enables TBS, Google and Plaintiff's competitors to use the "Firepond" trademark to place their advertising hyperlinks in front of consumers who specifically search for the Plaintiff, thereby confusing Internet Users and diverting a percentage of such Users from Plaintiff and enjoying and benefitting from all of the goodwill and "buyer's momentum" associated with Plaintiff's valuable trademark. An example of TBS's improper use of the "Firepond" trademark is set forth below:



23.    Defendant MySpace has improperly infringed upon the Plaintiff's Firepond Marks by selling, for example, Plaintiff's trademark "Firepond" to Plaintiff's competitors as a keyword so that when an Internet User searches for "Firepond" on Defendant Google's Internet search engine which is available on the MySpace website, the competitor's advertisement hyperlink will appear at the very top of and/or on the right side of the first page of the search results.    This enables MySpace, Google and Plaintiff's competitors to use the "Firepond" trademark to place their advertising hyperlinks in front of consumers who specifically search for the Plaintiff, thereby confusing Internet Users and diverting a percentage of such Users from Plaintiff and enjoying and benefitting from all of the goodwill and "buyer's momentum" associated with Plaintiff's valuable trademark. An example of MySpace's improper use of the "Firepond" trademark is set forth below:



24.     Defendant ASK.com has improperly infringed upon the Plaintiff's Firepond Marks by selling, for example, Plaintiff's trademark "Firepond" to Plaintiff's competitors as a keyword so that when an Internet User searches for "Firepond" on Defendant Google's Internet search engine which is available on the ASK.com website, the competitor's advertisement hyperlink will appear at the very top of and/or on the right side of the first page of the search results.   This enables ASK.com, Google and Plaintiff's competitors to use the "Firepond" trademark to place their advertising hyperlinks in front of consumers who specifically search for the Plaintiff, thereby confusing Internet Users and diverting a percentage of such Users from Plaintiff and enjoying and benefitting from all of the goodwill and "buyer's momentum"

associated with Plaintiff's valuable trademark. An example of ASK.com's improper use of the "Firepond" trademark is set forth below:



25.     Defendants have improperly infringed upon the Class Members' respective Class Marks by selling, for example, Class Marks to the respective Class Members' competitors as keywords so that when an Internet User searches for a particular Class Mark on Defendant Google's Internet search engine at one of Defendants' websites, the competitor's advertisement hyperlink will appear at the very top of and/or on the right side of the first page of the search results.   This enables Defendants and the respective Class Members' competitors to use a particular Class Mark to place their advertising hyperlinks in front of consumers who specifically search for the particular Class Member, thereby confusing Users and diverting a percentage of such Internet Users from such Class Member and enjoying and benefitting from all of the goodwill and "buyer's momentum" associated with Class Member's valuable trademark.

26.     Defendants have improperly infringed upon the Class Members' respective Class Marks by making available the Google search engine on their respective websites and thus benefiting from Google's selling, for example, Class Marks to the respective Class Members' competitors as keywords so that when an Internet User searches for a particular Class Mark on Defendant Google's Internet search engine at one of Defendants' websites, the competitor's

advertisement hyperlink will appear at the very top of and/or on the right side of the first page of the search results. This enables Defendants and the respective Class Members' competitors to use a particular Class Mark to place their advertising hyperlinks in front of consumers who specifically search for the particular Class Member, thereby confusing Users and diverting a percentage of such Internet Users from such Class Member and enjoying and benefitting from all of the goodwill and "buyer's momentum" associated with Class Member's valuable trademark.

27.     Defendants profit financially from infringing upon Plaintiff's and each Class Member's protected trademarks and assisting and encouraging third parties to do so as well. Moreover, upon information and belief, Defendants further profit financially from infringing upon Plaintiff's and each Class Member's protected marks by collecting fees from the advertiser for each "click-through". Thus, Defendants profit from the initial interest confusion of having the Internet Users diverted to competitors' sites, regardless of whether such Internet Users consummate a sale with the competitor or not.

## BACKGROUND OF THE CLASS ACTION

28.     The Plaintiff is a software development business that is headquartered in Marshall, Texas, but offers franchises nationwide. The Plaintiff has approximately 50 employees nationwide and in Europe.

29.     The Class Members are individuals and/or entities (excluding governmental entities, Defendants, and Defendants' parents, predecessors, subsidiaries, affiliates, and agents) domiciled within the state of Texas that own a mark that has been registered with the USPTO that has been sold by defendant Google as a keyword and/or an Adword during the period May 11, 2005 through the present.

30.     Defendant Google has as its primary business the operation of an Internet search engine located at Google.com. Google claims to be the most popular Internet search engine available on the World Wide Web, and purports to maintain proprietary, patented software which lists websites in order of relevance to the search terms input by an internet user.

31.     An Internet search engine is a website which allows the Internet User to type in a search term, and responds with a list of websites which relate to that search term. The list is usually in order of relevance, with the most relevant websites appearing first, and are also often voluminous, often listing thousands of websites (hereafter "Search Results").

32.     The Internet is a global network of millions of connected computers which over the last ten to fifteen years has revolutionized how individuals and businesses operate and communicate.  The World Wide Web is a portion of the Internet which is designed to display information visually on "websites" which are collections of connected "webpages". Websites are located and identified by their "domain names", which is the name of the website, followed by the appellation .com or .org or .biz, etc. For example, Defendant Google's Internet search engine is located at the domain name Google.com. The Plaintiff's main website appears at "Firepond.com."

33.     Among Internet Users, there are two primary ways of attempting to find the website of a particular company. First, Internet Users may guess that the website of a particular company will use the company's name or trademark as a "domain name", and input that domain name into an Internet Browser which will display the contents of such website.

34.     The second primary way an Internet User may attempt to find the website of a particular company is to type in that company's known trademarks or name into an Internet search engine.

35.     Google claims, and upon information and belief most Internet Users who perform searches on Google believe, that the results given by Google's Internet search engine are listed in order of relevance to the search terms input to the Search Engine, with the most relevant websites appearing first.

36.     Google offers a program called "AdWords" which allows advertisers to bid for their advertising hyperlinks to appear in response to particular search terms input by Internet Users (hereafter, "Keywords"). The advertising hyperlinks, called "Sponsored Links", appear either to the right of the Search Results, or immediately above the Search Results. A Sponsored Link is a hyperlink to the advertiser's ad, and allows the Internet User to use their mouse to "click" on the Link, which brings the Internet User directly to the advertiser's commercial website. The advertisers pay Defendant Google based upon the number of "clicks" on these Sponsored Links. Advertisers bid for placement of their advertisements for each possible variation of a Keyword, as there is limited space on Defendant Google's Search Results Page.

37.     Defendants YouTube, AOL, TBS, MySpace and ASK.com, use the Google Internet search engine and the Google AdWords advertising service within each such Defendant's proprietary website.

38.     Upon information and belief, Defendants derive significant revenue from individuals and companies who pay for sponsored links and hyperlinks using the Firepond Marks and the Class Marks.

39.     According to Google's policy, anyone can buy Adwords and therefore show up in "Sponsored Links."  For example, Trademark Holders can, and often do, bid on adwords so that their results show up in Sponsored Links.  Similarly, authorized users of a Trademark (such as authorized distributors, retailers, resellers, etc.) ("Authorized TM Users"), often purchase

Adwords and are listed among the Sponsored Links. In addition, competitors of Trademark Holders can also bid on Adwords and be listed among the Sponsored Links when an Internet User searches for a Trademark that has been purchased as an Adword.

40. As a result of Google's policy, Internet Users are conditioned to expect the Sponsored Links to include Trademark Holders and authorized users of such Trademarks. Moreover, because the Authorized TM Users will often have domain names that do not include the Trademark, Internet Users searching for a particular Trademark cannot tell by looking at the domain name whether a given Sponsored Link is associated or authorized with the Trademark Holder or not. The Internet User who is searching for the Trademark Holder or an Authorized TM User is thereby duped into clicking through to a competitor's Sponsored Link.

41. Moreover, the so-called "Sponsored Links" do not always clearly identify themselves as advertisements, and Google's layout of the ads does not conspicuously identify them as such. This is particularly true of the Sponsored Links which appear at the top of the Search Results. These ads at the top of the Search Results are designed by Google to look like part of the "non-sponsored" Search Results, and by virtue of the fact that they appear at the top of the list of Search Results, a significant portion of Internet Users are confused into thinking they are the most relevant websites on the Search Results page. In addition, because of Defendant Google's deceptive practice of calling the advertisements "Sponsored Links," a significant portion of Internet Users are confused into believing that the Sponsored Links are sponsored by the trademark owner.

42. A number of individuals and entities (including the competitors of the Plaintiff and the Class Members) also advertise their services on the Internet, and through Google's AdWords advertising program. Many such competitors have submitted the Firepond Marks

(including the name "Firepond") and the Class Marks as Keywords to Google either alone, or in conjunction with other words, such that when an Internet User searches on Google.com for a Firepond Mark or a Class Mark the competitor's advertising Sponsored Link also appears either to the immediate right or on top of the Search Results page.

43.     Google utilizes an online program called a "Keyword Suggestion Tool" to suggest to one or more of Plaintiff's and Class Members' competitors that they should use the Firepond Marks or Class Marks (as applicable) as a Keyword for their advertising. Google's suggestion is designed to make such competitors' advertising more successful and therefore more profitable for Google, by intercepting and diverting customers and potential customers of Plaintiff and Class Members to others.

44.     Google's policy is that it will not remove or otherwise disable a Sponsored Link, even after receiving notice by a trademark owner that the Sponsored Link is infringing a registered trademark, unless the Sponsored Link uses the trademark in the text of the advertisement.

45.     Google sells advertising using the Firepond Marks and the Class Marks as Keywords for the specific purpose of intercepting consumers and customers of the Plaintiff and the Class Members and those who are specifically looking for Plaintiff or a Class Member and diverting them to their respective competitors.

46.     Upon information and belief, Defendant Google, in cooperation with Plaintiff's and the Class Members's competitors, uses the Firepond Marks and the Class Marks respectively in Google AdWords Internet advertising for several improper purposes, including the following:

a. Intentionally confusing and diverting potential customers who are actively looking for the Plaintiff or a Class Member to one or more competitor's websites and services;

b. Taking advantage of and trading upon and receiving the benefits of the goodwill and good reputation associated with the Firepond Marks and the Class Marks;

c. Giving a competitor's goods and services appeal, credibility and marketability by association with the Plaintiff or a Class Member;

d. Falsely indicating to potential customers that a competitor is sponsored, endorsed, affiliated with or approved by Plaintiff or a Class Member;

e. Falsely implying that the competitor's services are as good as, or a credible substitute for, those goods and services offered by Plaintiff or a Class Member; and

f. Hijacking the Firepond mark or a Class mark by diverting the goodwill associated with any such trademark and diverting it to Defendant Google's own benefit and the benefit of others, without authorization or compensation to the Plaintiff or Class Members.

47. Defendant Google's use of the Firepond Marks and the Class Marks via its AdWords advertising program does the following:

a. causes confusion in the marketplace that a competitor's goods and services are affiliated with or otherwise approved or "sponsored" by the Plaintiff or a Class Member (as applicable);

b. allows Defendants and Plaintiff's and Class Members' competitors to financially benefit from and to trade off of the goodwill of Plaintiff and the Class Members.

48. When an Internet User searching on Defendant Google's Internet search engine for a Firepond Mark or a Class Mark is presented with a Search Results Page which contains multiple Sponsored Links, Internet Users may click on one of the Sponsored Links for a competitor, believing that it is related to, or sponsored by Plaintiff or a Class Member. Even if the Internet User ultimately realizes that the website they have been taken to is not Plaintiff's or a Class Member's website or a website authorized by Plaintiff or a Class Member, the damage to Plaintiff or such Class Member has been done. A percentage of such Internet Users may either stay at the competitor's website, or may otherwise discontinue their search for Plaintiff or such Class Member because of the initial confusion. An Internet User may associate the quality of goods and services offered on such competitor's website with those offered by Plaintiff or such Class Member, and if dissatisfied with such goods or services, may ascribe such bad feelings to the Plaintiff or Class Member, thereby causing loss of goodwill, or may discontinue their search for such services entirely. Defendants profit from such infringement because they get paid for each click-through.

49. Defendant Google has sold the Firepond Marks and the Class Marks as Keywords, and profited thereby, with full intent and awareness of claims that such practice violates trademark laws.

50. Defendant Google stated in their own prospectus as follows:

Companies have also filed trademark infringement and related claims against us over the display of ads in response to user queries that include trademark terms. The outcomes of these lawsuits have differed from jurisdiction to jurisdiction. A court in France has held us liable for allowing advertisers to select certain

trademarked terms as keywords. We have appealed this decision. We were also subject to two lawsuits in Germany on similar matters where one court preliminarily reached a similar conclusion as the court in France, while another court held that we are not liable for the actions of our advertisers prior to notification of trademark rights. We are litigating similar issues in other cases in the U.S., France, Germany and Italy. *In order to provide users with more useful ads, we have recently revised our trademark policy in the U.S. and Canada. Under our new policy, we no longer disable ads due to selection by our advertisers of trademarks as keyword triggers for the ads. As a result of this change in policy, we may be subject to more trademark infringement lawsuits. Defending these lawsuits could take time and resources. Adverse results in these lawsuits may result in, or even compel, a change in this practice which could result in a loss of revenue for us, which could harm our business.*
(emphasis added)

51.     By reason of the above, Defendant Google's actions are deliberate, willful and with full knowledge of the requirements of trademark law and were taken upon advice of counsel and for the purpose of its own profit by means of selling Plaintiff's and the Class Members' registered and protected trademarks, and exploiting and trading upon and diverting the benefit of the goodwill associated with Plaintiff and the Class without permission or compensation. This constitutes a willful violation of Plaintiff's and the Class Members' trademark rights.

52.     Internet Users who search for Plaintiff and Class Members by using the Firepond Marks and the Class Marks as a search term, or in combination with other search terms, are manipulated into believing that the Sponsored Links of Plaintiff's and Class Members' competitors are related to Plaintiff and the Class Members, by their placement on the Search Results page, their appearance and similarity to the Search Results, and/or their content. Nothing on the Search Results page communicates to an Internet User that such Sponsored Links have no relationship whatsoever to the Plaintiff and the Class Members, and are in fact paid advertisements by competitors to Leads Plaintiff and the Class Members. Nor could Defendants provide such a communication because Defendants sell Adwords to Trademark Holders and Authorized TM Users as well as competitors. Thus, Defendants have intentionally developed a

practice and policy that results in confusion as to whether the Sponsored Links are sponsored or affiliated with the Trademark Holders for the purpose of causing Internet Users to click-through the Sponsored Links to see if they are associated with the Member for which they were searching, all to the benefit of Defendants, who collect revenue for each click-through.

<u>**COUNT I**</u>

**VIOLATION OF THE LANHAM ACT - 15 USC § 1114 (1)**

53.     Plaintiff, on behalf of itself and each Class Member, repeats and realleges each and every allegation made above as if more fully set forth at length herein.

54.     This Count is brought by Plaintiff in its individual and representative capacity, against all Defendants.

55.     Firepond is the owner of the Firepond Marks, which marks are valid, enforceable trademarks registered with the United States Patent and Trademark Office.

56.     The Class Members are the respective owners of the Class Marks, which marks are valid, enforceable trademarks registered with the United States Patent and Trademark Office.

57.     Defendant Google has violated Plaintiff's and the Class Members' exclusive rights to the Firepond Marks and Class Marks, respectively, and contributed to the violation of such rights by others, by using and suggesting and encouraging the use by its AdWords advertisers of the Firepond Marks and Class Marks as Keywords as a means of advertising and selling the goods and services of Firepond's and Class Members' competitors through Google's AdWords advertising service.

58.     Defendants YouTube, AOL, TBS, MySpace, ASK.com and Google have violated Plaintiff's and Class Members' exclusive rights to the Firepond Marks and Class Marks, and

contributed to the violation of such rights by others, by using the Google search engine and the Google AdWords advertising service within each such Defendants' proprietary website.

59.     Defendants' use of the Firepond Marks and Class Marks constitutes a use in commerce in connection with the sale, offering for sale, distribution and advertising of goods and services, though it be for the goods and services of third parties.

60.     The goods and services offered by one or more of Firepond's or Class Members' competitors which participated in Defendant Google's AdWords service by using the Firepond Marks or Class Marks as a Keyword are substantially similar to the goods and services offered by Plaintiff or Class Members.

61.     Upon information and belief, Defendants' use of the Firepond Marks and Class Marks causes at least some consumers actively seeking to find and do business with Firepond and Class Members to be diverted to one or more Sponsored Links linking to the webpages of Firepond's and Class Members' competitors   Such use of the Firepond Marks and Class Marks wrongfully diverts potential revenue associated with the Firepond Marks and Class Marks to Defendants.

62.     Defendants are promoting, encouraging, enabling and profiting from Firepond's and Class Members' competitors' intentional confusion and "free-riding" on Plaintiff's and Class Members' goodwill and the name recognition they enjoy in the marketplace.

63.     Upon information and belief, some Internet Users who search for Firepond or a Class Member on Defendants' websites using the Google Internet search engine by inputting any Firepond Mark or Class Mark thereafter click upon a competitor's Sponsored Link by mistake or confusion, or because they are deceived into believing it is related to the Firepond Mark or Class Mark, and thereafter do not continue their search for Firepond or the Class Member.

64.     Upon information and belief, after being diverted from their search for Firepond or the Class Member, some Internet Users lose the initial "momentum" generated by the goodwill associated with the Firepond Marks or Class Marks, or are otherwise presented with purchasing barriers associated with making a choice between competing providers of services, and causes Firepond or Class Member to lose one of the key benefits of its Firepond Marks and Class Marks.

65.     By reason of the above, Defendants have violated the exclusive rights of the Plaintiff and each Class Member in and to its use of the Firepond Marks and the Class Marks, and have contributed to the violation of such rights by others by enabling, cooperating with, suggesting and encouraging the use of Firepond Marks and Class Marks by others, and may be held liable in a civil action under *15 U.S.C. § 1114 (1)*.

66.     Defendant Google's policy regarding the use of trademarks as a Keyword in association with Sponsored Links applies to the website of each Defendant insofar as each such website is utilizing the Google Internet search engine.

67.     Defendant Google has refused to alter its policy permitting companies other than Firepond or the Class Member, including their competitors, from using the Firepond Marks and Class Marks as Keywords in association with Sponsored Links, even after due demand; therefore, its violation of Plaintiff's and each Class Member's trademark rights under the Lanham Act is a willful and intentional violation of Plaintiff's and each Class Member's exclusive rights.

68.     Upon information and belief, Defendant Google used and encouraged third parties to use the Firepond Marks and Class Marks with the intention of benefitting from the goodwill associated with such trademarks in that such use was intended to cause confusion and to deceive

potential customers, and to divert customers from Firepond and each Class Member to third parties, or otherwise improperly benefit from the goodwill associated with the Firepond Marks and Class Marks.

69.     Upon information and belief, Defendant Google has deliberately altered its policy regarding trademark violations through its Internet search engine and its AdWords advertising program for the express purpose of profiting from the sale of such additional Keywords and the advertising benefit it provides to Firepond's and each Class Member's competitors. This change in policy was made with the intent of increasing Defendant Google's advertising revenues.

70.     Defendants' use in commerce of the Firepond Marks and the Class Marks is likely to cause confusion, mistake, and deception.

71.     Defendants' use of the Firepond Marks and the Class Marks is likely to cause initial interest confusion among the general public.

72.     The above-described acts of Defendants related to the Firepond Marks and the Class Marks constitute trademark infringement in violation of *15 U.S.C. § 1114(1)*, entitling Plaintiff and the Class Members to relief.

73.     Defendants have unfairly profited from the infringing actions alleged herein.

74.     By reason of Defendants' acts, Plaintiff and the Class have suffered damage to the goodwill associated with the Firepond Marks and the Class Marks.

75.     Defendants' activities have irreparably harmed and, if not enjoined, will continue to irreparably harm Plaintiff and the Class and their Firepond Marks and Class Marks.

76.     Defendants' activities have irreparably harmed, and if not enjoined, will continue to irreparably harm, the general public.  The general public has an interest in being free from confusion, mistake, and deception.

77. By reason of Defendants' acts, Plaintiff's and the Class' remedy at law is not adequate to compensate them for the injuries inflicted by Defendants. Accordingly, Plaintiff and the Class are entitled to preliminary and permanent injunctive relief pursuant to *15 U.S.C. §1116.*

78. By reason of Defendants' willful acts, Plaintiff and the Class are entitled to damages, and that those damages be trebled under *15 U.S.C. § 1117.*

79. This is an exceptional case, making Plaintiff and the Class eligible for an award of attorneys' fees under *15 U.S .C. § 1117.*

80. Accordingly, Plaintiff and the Class are entitled to monetary damages, legal relief, equitable relief and/or otherwise more fully described in the Prayer for Relief.

81. By reason of the above, Google is in violation of *15 U.S.C. § 1114 (1)* and Plaintiff and each Class Member is entitled to recover profits and damages from Defendants.

82. Plaintiff and each Class Member has been damaged by Defendant's violations of their rights under the Lanham Act in an amount to be determined at trial. Plaintiff's and the Class Members' damages are irreparable and they have no adequate remedy at law.

## COUNT II

### FALSE DESIGNATION OF ORIGIN - 15 U.S.C. § 1125 (a)

83. Plaintiff, on behalf of itself and each Class Member, repeats and realleges each and every allegation made above as if more fully set forth at length herein.

84. This Count is brought by Plaintiff in its individual and representative capacities, against all Defendants.

85. Defendant Google's sale of Plaintiff's Firepond Marks as a Keyword to competitors of Firepond constitutes a use in commerce.

86.     Defendant Google's sale of any Class Members' Class Marks as a Keyword to competitors of any such Class Member constitutes a use in commerce.

87.     Internet Users who search using any Firepond Mark as a search term on Defendant Google's Internet search engine have a reasonable expectation that the websites and hyperlinks appearing on Defendant Google's Search Results Page are directly related to Plaintiff.

88.     Internet Users who search using any Class Mark as a search term on Defendant Google's Internet search engine have a reasonable expectation that the websites and hyperlinks appearing on Defendant Google's Search Results Page are directly related to such Class Member.

89.     Internet Users who view Sponsored Links, some or all of which appear to be part of the Search Results, may become confused, or deceived that Sponsored Links which link to Firepond's competitor's websites may be affiliated with, connected to, or approved by Plaintiff Firepond.

90.     Internet Users who view Sponsored Links, some or all of which appear to be part of the Search Results, may become confused or deceived that Sponsored Links which link to a Class Members' competitor's websites may be affiliated with, connected to, or approved by such Class Member.

91.     The placement of such competing Sponsored Links in response to a search by an Internet User using the Firepond Mark or a Class Mark as one or more of the search terms constitutes a false designation of origin, affiliation, connection or association of such competitor with Plaintiff Firepond or such Class Member, or a false description of origin, sponsorship or approval of the goods or services or activities of such competitor by Firepond or such Class

Member, and a contribution to the false designations by others by enabling, cooperating with, suggesting and encouraging the use of the Firepond Mark or Class Mark by others.

92.     Defendants' use in commerce of the Firepond Marks and the Class Marks, as alleged herein is likely to cause confusion and deception.

93.     The above-described acts of Defendants constitute trademark infringement of Plaintiff's and the Class' Firepond Marks and Class Marks and false designation of origin in violation of *15 U.S.C. § 1125(a)*, entitling Plaintiff and the Class to relief.

94.     Defendants have unfairly profited from the actions alleged herein.

95.     By reason of Defendants' acts alleged herein, Plaintiff and the Class have suffered damage to the goodwill associated with the Firepond Marks and the Class Marks.

96.     Defendants' activities have irreparably harmed and, if not enjoined, will continue to irreparably harm Plaintiff and the Class, and their long-used Firepond Marks and Class Marks respectively.

97.     Defendants' activities have irreparably harmed, and if not enjoined, will continue to irreparably harm the general public, who has an interest in being free from confusion, mistake, and deception.

98.     By reason of Defendants' acts alleged herein, Plaintiff's and the Class' remedy at law is not adequate to compensate them for the injuries inflicted by Defendants.

99.     Accordingly, Plaintiff and the Class are entitled to preliminary and permanent injunctive relief pursuant to *15 U.S.C. § 1116.*

100.     By reason of Defendants' willful acts, Plaintiff and the Class are entitled to damages, and those damages should be trebled under *15 U.S .C. § 1117.*

101. This is an exceptional case making Plaintiff and the Class eligible for an award of attorneys' fees under *15 U.S.C. § 1117*.

102. Accordingly, Plaintiff and the Class are entitled to monetary damages, legal relief, equitable relief and/or otherwise more fully described in the Prayer for Relief.

**COUNT III**

**COMMON LAW TRADEMARK VIOLATION**

103. Plaintiff, on behalf of itself and each Class Member repeats and realleges each and every allegation made above as if more fully set forth at length herein.

104. This Count is brought by Plaintiff, in their individual and representative capacities, against all Defendants.

105. Defendants' use of the Plaintiff's Firepond Marks for the commercial purpose of selling it in return for advertising revenue, and for the purpose of advertising the goods and services of those in competition with Plaintiff, and not for the purpose of referring to Plaintiff and its goods and services, and without the permission of Plaintiff, is an infringement of Plaintiff's common law trademark rights.

106. Defendants' use of the Firepond Marks allows Defendants to freely trade off of and benefit from the goodwill associated with Plaintiff's name and the Firepond Marks without consequent expense to itself, to its advertisers, or compensation to Plaintiff.

107. Defendants' use of the Firepond Marks is deceptive and is likely to cause confusion or mistake in the minds of actual and potential customers who search for Plaintiff on Defendant Google's Internet search engine, and is therefore a violation of Plaintiff's common law trademark rights and a contribution to the violation of such rights by others by encouraging, and enabling them to do so.

108.    Defendants' use of the respective Class Members Class Marks for the commercial purpose of selling such trademarks in return for advertising revenue, and for the purpose of advertising the goods and services of those in competition with the respective Class Members, and not for the purpose of referring to the Class Members and their respective goods and services, and without the permission of such Class Members, is an infringement of the Class Members' common law trademark rights.

109.    Defendants' use of the Class Marks allows Defendants to freely trade off of and benefit from the goodwill and reputation associated with the respective Class Members' names and the Class Marks without consequent expense to itself, to its advertisers, or compensation to the respective Class Members.

110.    Defendants' use of the Class Marks is deceptive and is likely to cause confusion or mistake in the minds of customers and potential customers who search for the respective Class Members on Defendant Google's Internet search engine, and is therefore a violation of the respective Class Members' common law trademark rights and a contribution to the violation of such rights by others by encouraging, suggesting and enabling them to do so.

111.    Defendants have unfairly profited from the actions alleged herein.

112.    By reason of Defendants' acts alleged herein, Plaintiff and the Class have suffered damage to the goodwill associated with the Firepond Marks and the Class Marks.

113.    Defendants' activities have irreparably harmed and, if not enjoined, will continue to irreparably harm Plaintiff and the Class, and their Firepond Marks and Class Marks respectively.

114. Defendants' activities have irreparably harmed, and if not enjoined, will continue to irreparably harm the general public, who has an interest in being free from confusion, mistake, and deception.

115. By reason of Defendants' acts alleged herein, Plaintiff's and the Class' remedy at law is not adequate to compensate them for the injuries inflicted by Defendants.

116. Accordingly, Plaintiff and the Class are entitled to monetary damages, legal relief, equitable relief and/or otherwise more fully described in the Prayer for Relief.

## COUNT IV

## CONTRIBUTORY TRADEMARK INFRINGEMENT

117. Plaintiff, on behalf of itself and each Class Member, repeats and realleges each and every allegation made above as if more fully set forth at length herein.

118. This Count is brought by Plaintiff, in its individual and representative capacities, against all Defendants.

119. Contributory trademark infringement occurs when a defendant either intentionally induces a third party to infringe the person's mark, or supplies a service or product to a third party with actual or constructive knowledge that the service or product is being used to infringe the person's mark.

120. Defendants have actual knowledge, or have reason to know, of the Deceptive Trademark Practice, infringing activities, and other unlawful conduct alleged herein.

121. Defendants supply the illegal revenue-generating services, mechanisms, algorithms, technology and programs necessary to engage in the Deceptive Trademark Practice, through which the Defendants and third parties infringe the Firepond Marks and the Class Marks.

122.     Defendants, on an ongoing basis, knowingly and voluntarily continue to engage in the Deceptive Trademark Practice, infringing activities, and other unlawful conduct alleged herein, in order to obtain revenue and profit, and commercial gain, despite knowledge that their activities are in direct violation of applicable state and federal law.

123.     Defendants induce, cause, and/or materially contribute to the Deceptive Trademark Practice and other unlawful conduct alleged herein.

124.     Statements or actions by Defendants directed to promoting and controlling the Deceptive Trademark Practice and other unlawful conduct alleged herein, include, but are not limited to the following:

    a.  Defendant Google states that it utilizes tools to maximize placement of "pay-per-click/cost-per-click" advertising through the Deceptive Trademark Practice on the Defendants' websites;

    b.  Defendant Google creates, designs, maintains, monitors, changes, and otherwise controls the HTML web page associated with each of the Defendants' various websites;

    c.  Defendant Google controls which advertisements appear on each of the Defendants' various websites;

    d.  Defendant Google generates substantial revenue from each of the Defendants' websites that show Google advertising;

    e.  Defendant Google collects the advertising revenue from its advertisers;

    f.  Defendant Google disperses the revenue generated from the Deceptive Trademark Practice on the Defendants' websites;

g. Defendant Google actively seeks, solicits, and promotes advertising through the Deceptive Trademark Practice; and

h. Defendant Google controls and directs the Internet traffic from the Defendants' websites through Defendant Google's advertising system as alleged herein.

125. All other Defendants participate with Defendant Google in one or more of the above-referenced illegal actions in furtherance of the Deceptive Trademark Practice.

126. Defendants' actions as alleged herein constitute Contributory Infringement.

127. Defendants' Contributory Trademark Infringement has directly and proximately injured and damaged and continues to injure and damage Plaintiff and the Class by, among other things, causing them to lose control of their business reputation, causing confusion, diverting customers and sales, and otherwise causing significant commercial loss.

128. Defendants have unfairly profited from the actions alleged herein.

129. By reason of Defendants' acts alleged herein, Plaintiff and the Class have suffered damage to the goodwill associated with the Firepond Marks and the Class Marks.

130. Defendants' activities have irreparably harmed and, if not enjoined, will continue to irreparably harm Plaintiff and the Class, and their Firepond Marks and Class Marks respectively.

131. Defendants' activities have irreparably harmed, and if not enjoined, will continue to irreparably harm the general public, who has an interest in being free from confusion, mistake, and deception.

132.     By reason of Defendants' acts alleged herein, Plaintiff's and the Class's remedy at law is not adequate to compensate them for the injuries inflicted by Defendants.

133.     Accordingly, Plaintiff and the Class are entitled to monetary damages, legal relief, equitable relief and/or otherwise more fully described in the Prayer for Relief.

<u>**COUNT V**</u>

**VICARIOUS TRADEMARK INFRINGEMENT**

134.     Plaintiff, on behalf of itself and each Class Member, repeats and realleges each and every allegation made above as if more fully set forth at length herein.

135.     This Count is brought by Plaintiff, in its individual and representative capacities, against all Defendants.

136.     Vicarious infringement occurs when a defendant controls, directs, facilitates, encourages, promotes, allows, enables, or otherwise permits a third party to infringe a mark, and receives the benefit therefrom.

137.     Defendants facilitate, encourage, promote, allow, enable and otherwise permit direct infringements, and the other illegal conduct alleged herein, in the course of their respective businesses.

138.     Defendants maintain the right, power and ability to control, edit, alter, modify and maintain the software used to effectuate the infringements and in the Deceptive Trademark Practice.

139.     Defendants fail to exercise their policing obligations to the fullest extent, fail to utilize and implement available filtering technologies, and otherwise have engaged in a pattern of direct and intentional misconduct, or willful blindness of their actions related to the Deceptive Trademark Practice, infringing activities, and other unlawful conduct alleged herein.

140.     Defendants control and participate in the supply of the illegal revenue-generating services, mechanisms, technology and programs necessary to engage in the Deceptive Trademark Practice, through which the Defendants and third parties infringe the Firepond Marks and the Class Marks.

141.     Defendants, on an ongoing basis, knowingly and voluntarily continue to engage in the Deceptive Trademark Practice, infringing activities, and other unlawful conduct alleged herein, in order to obtain revenue and profit, and commercial gain, despite knowledge that their activities are in direct violation of applicable state and federal law.

142.     Defendants have the primary financial interest in the exploitation of the Firepond Marks and the Class Marks. Defendants are the primary beneficiaries of the infringements and illegal conduct alleged herein.

143.     Defendants induce, cause, and/or vicariously engage in the Deceptive Trademark Practice and other unlawful conduct, as alleged more fully herein.

144.     Defendants' actions as alleged herein constitute vicarious infringement.

145.     Defendants' vicarious infringements have directly and proximately injured and damaged and continues to injure and damage Plaintiff and the Class by, among other things, causing them to lose control of their business reputation, causing confusion, diverting customers and sales, and otherwise causing significant commercial loss.

146.     Defendants have unfairly profited from the actions alleged herein.

147.     By reason of Defendants' acts alleged herein, Plaintiff and the Class have suffered damage to the goodwill associated with the Firepond Marks and the Class Marks.

148. Defendants' activities have irreparably harmed and, if not enjoined, will continue to irreparably harm Plaintiff and the Class, and their long-used Firepond Marks and Class Marks respectively.

149. Defendants' activities have irreparably harmed, and if not enjoined, will continue to irreparably harm the general public, who has an interest in being free from confusion, mistake, and deception.

150. By reason of Defendants' acts alleged herein, Plaintiff's and the Class' remedy at law is not adequate to compensate them for the injuries inflicted by Defendants.

151. Accordingly, Plaintiff and the Class are entitled to monetary damages, legal relief, equitable relief and/or otherwise more fully described in the Prayer for Relief.

## COUNT VI

## UNJUST ENRICHMENT

152. Plaintiff, on behalf of itself and each Class Member, repeats and realleges each and every allegation made above as if more fully set forth at length herein.

153. This Count is brought by Plaintiff, in its individual and representative capacities, against all Defendants.

154. This Count is brought in the alternative to any contract and statutory claims.

155. By and through the Deceptive Trademark Practice and the conduct as alleged above, Defendants unjustly derived a benefit from Plaintiff and the Class in the form of higher payments, increased advertising click revenue, increased market share, and other economic and related benefits and commercial gain, to which Defendants had no right or entitlement. The benefits to Defendants were conferred as a result of Defendants' deception, misconduct, and material misrepresentations involving the Firepond Marks and the Class Marks.

156. It would be unjust to allow the Defendants to retain the said benefit by virtue of their conduct as alleged in paragraphs above thereby enriching them, without compensating the Plaintiff and the Class.

157. Defendants' activities have irreparably harmed and, if not enjoined, will continue to irreparably harm Plaintiff and the Class, and their long-used Firepond Marks and Class Marks respectively.

158. Defendants' activities have irreparably harmed, and if not enjoined, will continue to irreparably harm the general public, who has an interest in being free from confusion, mistake, and deception.

159. By reason of Defendants' acts alleged herein, Plaintiff's and the Class' remedy at law is not adequate to compensate them for the injuries inflicted by Defendants.

160. Accordingly, Plaintiff and the Class are entitled to monetary damages, legal relief, equitable relief and/or otherwise more fully described in the Prayer for Relief.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff, individually and on behalf of the Class, respectfully requests that this Court enter judgment as follows:

1. The Court determine that this action may be maintained as a class action pursuant to Rule 23 of the Federal Rules of Civil Procedure;

2. The Court certify the Class as follows:

Any and all individuals and/or entities (excluding governmental entities, Defendants, and Defendants' parents, predecessors, subsidiaries, affiliates, and agents) domiciled within the state of Texas that own a mark that has been

registered with the USPTO that has been sold by defendant Google as a keyword and/or an Adword during the period May 11, 2005 through the present.

3. The Court appoint Plaintiff as Class Representative for the Class;

4. The Court adjudge appoint Plaintiff's Counsel of record as Counsel for the Class;

5. The Court adjudge and decree that Defendants infringed the rights of Plaintiff and the Class in their Firepond Marks and Class Marks in violation of *15 U.S.C. § 1114(1);*

6. The Court adjudge and decree that Defendants infringed the rights of Plaintiff and the Class in their Firepond Marks and Class Marks by committing acts of infringement and false designation of origin in violation of *15 U.S.C. § 1125(a);*

7. The Court adjudge and decree that Defendants' conduct alleged herein infringed the rights of Plaintiff and the Class in their Marks in violation of the common law;

8. The Court adjudge and decree that Defendants be ordered to transfer every Deceptive Domain to the rightful owner of the Marks;

9. The Court adjudge and decree that Defendants, their agents, representatives, employees, assigns and suppliers, and all persons acting in concert or privity with them, be preliminarily and permanently enjoined from the following activities:

a. Using any of the Plaintiff's and Class' Marks, or any other name, mark, designation or depiction in a manner that is likely to cause confusion ("Deceptive Domains") regarding whether Defendants or the advertisers are affiliated or associated with or sponsored by Plaintiff and/or the Class;

b. Engaging in trademark infringement, false designation of origin, passing off, false advertising, against Plaintiff and/or any Class Member;

c. Engaging in or misappropriation of Plaintiff's and/or any of the Class Members' Mark rights;

d. Assisting, aiding or abetting any other person or business entity in engaging in or performing any of the activities referred to above.

10. The Court adjudge and decree that Defendants be ordered to engage in corrective advertising to the extent necessary to correct any consumer confusion, or misperceptions resulting from the unlawful acts complained of above;

11. The Court adjudge and decree that Defendants be ordered to account to Plaintiff and the Class for, and disgorge, all profits they have derived by reason of the Deceptive Domain Practice and unlawful acts complained of herein;

12. The Court adjudge and decree that Defendants be ordered to pay damages, punitive damages, and/or treble damages under applicable statutes;

13. The Court adjudge and decree that Defendants be ordered to pay Plaintiff's reasonable attorney fees, prejudgment interest, and costs of this action;

14. The Court adjudge and decree that Defendants be ordered to file with the Court and serve upon Plaintiff a written report under oath setting forth in detail the manner and form in which Defendants have complied with the injunction and judgment within thirty (30) days after the service of the injunction and judgment upon Defendants; and

15. That Plaintiff and the Class be awarded any and other such relief as may be appropriate.

## DEMAND FOR JURY TRIAL

Plaintiff, on behalf of itself and the Class, pursuant to Rule 38 of the Federal Rules of Civil Procedure, requests a trial by jury of all of the claims asserted in this Complaint so triable by right.

May 11, 2009                                    Respectfully submitted,

                                               **FPX, LLC**

                                                By: /s/ Andrew W. Spangler
                                               Scott M. Kline – LEAD COUNSEL
                                               Texas Bar No. 11573100
                                               E-mail: scottkline@andrewskurth.com
                                               Andrews Kurth LLP
                                               1711 Main Street, Suite 3700
                                               Dallas, Texas  75201
                                               Telephone: (214) 659-4400
                                               Facsimile: (214)659-4401

                                               Kip Glasscock
                                               Texas State Bar No. 08211000
                                               E-mail: kipglasscock@hotmail.com
                                               Kip Glasscock, P.C.
                                               550 Fannin, Suite 1350
                                               Beaumont, Texas 77701
                                               Telephone: (409) 833-8822
                                               Facsimile: (409) 838-4666

                                               Larry C. Russ
                                               California Bar No. 082760
                                               E-mail: lruss@raklaw.com
                                               Marc A. Fenster
                                               California Bar No. 181067
                                               E-mail: mfenster@raklaw.com
                                               RUSS, AUGUST & KABAT
                                               12424 Wilshire Boulevard 12th Floor
                                               Los Angeles, California 90025
                                               Telephone: 310/826-7474
                                               Facsimile: 310/826-6991

                                               David M. Pridham
                                               Rhode Island State Bar No. 6625
                                               E-mail: david@pridhamiplaw.com
                                               Law Office of David Pridham
                                               25 Linden Road

Barrington, Rhode Island 02806
Telephone: (401) 633-7247
Facsimile: (401) 633-7247

Andrew W. Spangler
Texas State Bar No. 24041960
SPANGLER LAW P.C.
208 N. Green Street, Suite 300
Longview, Texas 75601
Telephone:  903-753-9300
Facsimile:  903 553-0403
spangler@spanglerlawpc.com

**ATTORNEYS FOR PLAINTIFF
FPX, LLC**